IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| B.P. and C.P., minor students with | § | |
| disabilities, by and through | § | |
| their parents/guardians/next friends | § | |
| JOSE AND ANNA P. | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 19 -CV-159 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

NOW COMES JOSE AND ANNA P., natural parents of and on behalf of their daughter B.P. and son C.P., and files this their Original Complaint alleging that the Brownsville Independent School District (hereinafter referred to as Defendant Brownsville ISD or BISD) and paraprofessional Robert Torres, Individually, violated the various rights of B.P. and C.P. as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

1.    **INTRODUCTION.**

1.0    At all times relevant to this action, B.P. and C.P. were students in Brownsville ISD diagnosed with disabilities associated with autism and a speech impairment.    As noted above throughout this pleading B.P. and C.P. are persons with a disability.    At all times relevant to this action, they received special education services from Brownsville ISD, as contemplated by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1401.    As students with disabilities, both B.P. and C.P. also qualify as students with disabilities under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the American's with Disabilities Act, 43 U.S.C. § 12100 *et. seq*.

1.1    At the time of the incidents upon which this cause of action vests, B.P. was an eight-year old student attending the 3rd grade at Garza Elementary School within BISD and C.P. was a seven-year old student attending the 2nd grade at Garza Elementary School during the 2016-17 school year.    Garza Elementary School is an elementary school within BISD's catchment area.    B.P. was receiving special education and related services from Brownsville ISD due to a diagnosis of Autism and a Speech Impairment under the Individuals with Disabilities Education Act (IDEA) and an Individual Education Plan (IEP) was in place for B.P.    C.P. was receiving special education and related services from Brownsville ISD due to a diagnosis of Autism and a Speech Impairment under the IDEA and an IEP was in

place for C.P.  B.P. is non-verbal but can be prompted to use a communication book.  C.P. is non-verbal but expresses his needs and wants through gestures, crying, and/or smiling.  Both B.P. and C.P. were in the same instructional setting - a life skills classroom, a self-contained instructional setting where special education and related services are provided.  Both B.P. and C.P. spent more than 50% of the regular school day in the life skills classroom.  B.P. and C.P. were in the same classroom.

1.2    Defendant Brownsville Independent School District has an affirmative legal obligation to provide A.B. a free appropriate public education consistent with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et Seq., its regulations and Texas law, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (Section 504) and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (ADA).  During the relevant time, Brownsville ISD had policies in place against bullying and harassment of students that required investigations and reports regarding complaints of bullying and harassment of students by school employees.

2.    JURISDICTION AND VENUE.

2.0    This case is a claim under Section 504 and ADA.  As a recipient of Federal financial assistance from the U.S. Department of Education, Brownsville ISD is subject to Section 504 and its implementation regulation, 34 C.F.R. Part

104, which prohibit discrimination of the basis of disability.  As a public entity, Brownsville ISD is subject to the provisions of Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12131 et seq. and its implementing regulation, 28 C.F.R. Part 35, which prohibit discrimination on the basis of disability.

2.1    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Federal question jurisdiction arises under the Constitution and laws of the United States of America, including but not limited to Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §701 et seq.) and the Fourteenth Amendment to the United States Constitution pursuant to 48 U.S.C. §1983.

2.2    Jurisdiction is also conferred upon the Court pursuant to 28 U.S.C. §1415(l) as B.P. and C.P. have satisfied the exhaustion requirement for his non-IDEA claims, as contemplated in *Reyes v. Manor Independent School District*, 850 F.3d 251, 256 (5th Cir. 2017) (finding when a Hearing Officer gives a "finding and decision" on non-IDEA claims, as has occurred in this cause, exhaustion requirement is satisfied.)

2.3    Venue is proper under 28 U.S.C. § 1391(b) because the Brownsville Independent School district resides with the Southern District of Texas and all of the events that are the subject of this Complaint took place within the Southern District of Texas.

3.    EXHAUSTION OF IDEA CLAIMS.

3.0    The IDEA requires that "before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under the [IDEA]." 20 U.S.C. §1415(l).  To meet the statutory standard of administrative exhaustion under § 1415(l), a plaintiff has to exhaust the IDEA procedures before filing an action under the Americans with Disabilities Act or Section 504 of the Rehabilitation Act when his suit sought relieve also available under the IDEA.  However, the IDEA cannot be construed "to restrict or limit rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities. The court had to determine whether the suit sought relief for a denial of FAPE under the IDEA and, before he could file a complaint alleging Section 504 and Title II violations, the plaintiff had to exhaust administrative remedies first.  If relief sought did not fall under the IDEA, the plaintiff could proceed with his complaint.  Fry, 137 S.Ct. at 743.

3.1    Under the recent holding in *Fry v. Napoleon*, the Supreme Court held that determine whether the plaintiff's complaint sought relief under the IDEA or did not the court must determine the answers to two questions: (1) Could the

plaintiff brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? (2) Could an adult at the school have pressed essentially the same grievance? *Fry v. Napoleon Cmty, Sch*, 137 S.Ct. 743, 747 (2017).  If the answers to both questions is "No," the plaintiff is required to exhaust administrative remedies under §1415(l).  If the answer to both questions is "Yes," the complaint does not concern the provision of FAPE and the plaintiff's complaint can proceed.   The court can then determine whether the school district violated Section 504 and Title II of the ADA and if it failed to provide non-discriminatory access to an aid, benefit or services to disabled students otherwise eligible for IDEA's special education programming.   In the case at hand, the answers to the *Fry* analysis clearly shows that an adult in a nursing home or at a day care facility could have pressed essentially the same grievance had the paraprofessional exhibited the same behaviors toward the adult in such other settings.

3.2    Furthermore, Plaintiffs B.P. and C.P. have exhausted administrative remedies under §1415(l) when they filed complaints with TEA alleging violations under the IDEA on February 21, 2018, seeking relief under the IDEA.  The TEA assigned a hearing officer and docketed the cases as TEA Docket No. 150-SE-0218, *B.P. bnf J. and A.P. vs. Brownsville Independent School District* and TEA Docket No. 151-SE-0218, *C.P. bnf J. and A.P. vs. Brownsville Independent School District*.  On May 23, 2018, the parties voluntarily participated in mediation to

resolve their disputes, pursuant to 20 U.S.C. §1415 (e).  Upon approval by the Brownsville Board of Trustees, on June 6, 2018, the terms of the settlement agreement were effective.  On June 7, 2018, Plaintiffs filed their Motions to Dismiss with Prejudice with the TEA hearing officer, which were granted.

3.3    According to the terms in the Settlement Agreement effective on June 6, 2018, B.P.'s and C.P.'s parents agreed to release Brownsville ISD of all liability for a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., and its implementing regulations found at 34 C.F.R. § 300 *se seq*.  While all of Plaintiffs' claims under the IDEA are released, claims asserted in the due process complaint under the IDEA are barred by the settlement agreement.  However, the language in the settlement agreement does not expressly release any cause of action Plaintiffs may have under Section 504 or Title II of the ADA.  Thus, Plaintiffs have exhausted their administrative remedies under the IDEA concerning the "identification, evaluation, or educational placement of the provision of FAPE," as required under 20 U.S.C. §1415(l) and are free to pursue claims under Section 504 and Title II of the ADA.

3.4    Based on the above, Plaintiffs B.P. and B.P. have met all procedural requirements and can proceed with their claims against the Brownsville ISD alleging violations under Section 504, Title II of the ADA, the Fourth Amendment,

7

Constitutional Right to Bodily Integrity, the Equal Protection Clause of the Fourteenth Amendment.

4.    STATEMENT OF FACTS.

4.0    On or about August 16, 2017, B.P.'s and C.P.'s parents received a letter from Esmeralda Flores through her attorney Annabell Alegria.  Ms. Flores had been a paraprofessional in B.P.'s and C.P.'s life skills classroom at Garza Elementary School during the 2016-17 school year.   She was one of two paraprofessionals in the classroom along with the life skills classroom teacher, Ms. Ana P. Cisneros.  In the letter provided to B.P.'s and C.P.'s parents, Ms. Flores provided details of abusive actions and harassment by Mr. Robert Torres, the other paraprofessional in the classroom.   Ms. Flores recounted abusive actions and harassment that occurred in the life skills classroom during the 2016-17 school year.   Ms. Flores stated that she witnessed Mr. Torres bully B.P. and C.P. by calling them derogatory slang names such as "punks, wuerkos locos, pinches tacuaches, pinche marano, changa loca del monte."[1]   She also stated that Mr. Torres would not change C.P. out of his diaper when it was his duty to change his diaper.  She witnessed that C.P. "would be soiled in his own urine and feces for the entire day."  Despite informing Mrs. Cisneros that Mr. Torres would not change C.P.'s diaper, Mrs. Cisneros did not correct the issue.  Ms. Flores also witnessed

---

[1] Slang derogatory terms translated to English "punks, crazy kids, "damn" or "f…ing" possum (insinuating low life"), "damn" or "f…ing" pig,"crazy monkey from the sticks."

Mr. Torres "grab a female student by her hair because she didn't listen to him or when she was told to pick up the mess she made, Torres would then call her a "b…h." The female student sometimes would cry when he pulled her hair. The female student was later identified as B.P. Ms. Flores stated that teacher Ms. Cisneros was either not looking or was not around. Ms. Flores also stated that both Mr. Torres and Ms. Cisneros disagreed with the Speech Therapist Gina Crixell and Occupational Therapist Carolina Laughlin and refused to follow their advice to help the students. In April 2017, Ms. Flores informed Ms. Cisneros that on several occasions Mr. Torres smelled like alcohol and may have been on drugs at work.

4.1     Brownsville ISD's policy and practice are to adhere to the state's policy to treat all students, including those with disabilities, with dignity and respect. Brownsville ISD failed in the duty to protect and keep B.P. and C.P. from harassment and abuse. No action or investigation was ever initiated, contrary to Brownsville ISD policy. No investigations regarding the harassment and abuse inflicted on B.P. and C.P. were conducted per Brownsville ISD policy. Defendant Torres was not removed from the life-skills classroom where B.P. and C.P. were all day, every day. Defendant Torres was not removed from his duties to B.P. and C.P. Teacher Cisneros did not report Defendant Torres' behavior to campus administration or to Child Protective Services. Teacher Cisneros never informed

B.P.'s and C.P.'s parents of Defendant Torres' actions toward their children and contributed to the harm B.P. and C.P. suffered that school year.

4.2    On February 21, 2018, Jose and Anna P., on behalf of B.P. and C.P. filed separate Requests for Due Process with the Texas Education Agency alleging Brownsville ISD violated their respective rights under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.  The Texas Education Agency assigned the case to Honorable Ann Vevier Lockwood, a Special Education Hearing Officer for the State of Texas.  B.P.'s case was styled, *B.P. bnf J. and A.P. vs. Brownsville ISD*, Docket No. 150-SE-0218.  C.P.'s case was styled *C.P. bnf J. and A.P. vs. Brownsville ISD*, Docket No. 151-SE-0218.

4.3    As required under the IDEA, a resolution meeting was held on or about March 9, 2018, at the Brownsville ISD Special Education offices.  34 C.F.R § 300.510(a).   Both parents attended the resolution meeting.   Dr. Sandra Rodriguez, then the Special Education Director for Brownsville ISD, met with the parents.   In the resolution meeting, Dr. Rodriguez informed B.P.'s and C.P.'s parents that Esmeralda Flores had recanted her letter and that none of what Ms. Flores wrote that happened in B.P.'s and C.P.'s classroom was true.  B.P.'s and

C.P.'s parents were stunned and in disbelief. There was no resolution of their claims under the IDEA at that meeting.

4.4    Soon after leaving the resolution session, B.P.'s and C.P.'s parents called Ms. Esmeralda Flores. Ms. Flores told them that she had not recanted the letter and that she stood by what she wrote in the letter dated August 16, 2017. B.P.'s and C.P.'s parents were stunned that Dr. Rodriquez would tell them something that was patently false.

4.5    In prehearing conference held on March 14, 2018, counsel for Brownsville ISD requested Hearing Officer Lockwood dismiss the Section 504 claims and the Title II of the Americans with Disabilities Act in both cases. Hearing Officer Lockwood dismissed the Section 504 claims and the Title II claims as outside her jurisdictional authority under the IDEA.   See 34 C.F.R. § 300.507 (a)(1) [Under the IDEA, parents may file a due process complaint on any matters relating to the identification, evaluation or educational placement of a child with a disability or the provision of FAPE to the child.]

4.6    The parties agreed to participate in mediation as is allowed under 34 C.F.R, §300.506 and encouraged in the IDEA.  On May 22, 2018, the parties participated in mediation and were able to reach a settlement agreement.  However, before the Settlement Agreement and Release could be fully executed, it had to be

approved by the Brownsville ISD Board of Trustees.    On June 5, 2018, the Brownsville ISD Board of Trustees met and approved the Settlement Agreement.

4.7    Due to the issues noted above and more fully described below, B.P. and C.P. bring forth claims pursuant to the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and the Americans with Disabilities Act, 43 U.S.C. § 12100 et seq. (ADA); the Fourteenth Amendment to the Constitution of the United States, as well as the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, all as contemplated by the Civil Rights Acts, 42 U.S.C. §1983.

5.    SECTION 504 OF THE REHABILITATION ACT.

5.0    Section 504 of the Rehabilitation Act provides that "[n] otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794.

5.1    The Section 504 implementing regulation at 34 C.F.R. § 104.33 provides that a recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education (FAPE) to each qualified person with a disability who is in the recipient's jurisdiction,

regardless of the nature or severity of the person's disability.  For the purpose of this subpart, the provision of an appropriate education  is the provision of regular or special education and related aids and services that are designed to meet individual educational needs of persons with disabilities as adequately as the needs of persons without disabilities are met and are based upon adherence to procedures that satisfy the requirements of the Section 504 implementing regulations at 34 C.F. R. §§ 104.34, 104.35, and 104.36.

5.2    To prove that a public program or service violated Section 504, a plaintiff bringing suit must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

5.3    To determine a cause of action under Section 504, it must be alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program.  *Tatro v. State of Texas*, 703 F.2d 823, 832 (5th Cir. 1983).  The Section 504 appropriate education standard requires "a comparison between the manner in which the needs of disabled and non-disabled children are met…."

6.    TITLE II OF THE AMERICANS WITH DISABILITIES ACT.

6.0     Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability, shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entitled, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.   to provide that a public program or services violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.   Weinreich v. Los Angeles County Metropolitan Trans. Auth., 114 F.3d. 976, 978 (9th Cir. 1997)

6.1     The language in the ADA generally tracks the language set forth in Section 504. *Delano-Pyle v. Vict. County*, 302 F.3d 567, 574 (5th Cir. 2002).  Title II expressly provides that "[t]he remedies, procedures and rights" available under Section 504 are also accessible under Title II of the ADA.  42 U.S.C. § 12133 (1995).

6.2     There is no "deliberate indifference" standard applicable to public entities for purposes of 504 or ADA. *Delano-Pyle v. Vict. County*, 302 F.3d 567, 575 (5th Cir. 2002).  However, in order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination.

14

7. **LEGAL STANDARD FOR DISCRIMINATION UNDER SECTION 504 AND TITLE II OF THE ADA.**

7.0    B.P. and C.P. assert claims against Brownsville ISD under Section 504 of the Rehabilitation Act and Title II of the ADA. Individuals may enforce Section 504 and Title II of the ADA through a private right of action allowing victims of prohibited discrimination, exclusion, or denial of benefits to see "the full panoply of remedies, including equitable relief and [compensatory] damages." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S.Ct. 2017, 153 L. Ed. 2d 230 (2002). A plaintiff asserting a private cause of actions for violations of the ADA or Section 504 may only recover compensatory damages upon a showing of intentional discrimination. *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984).

7.1    Discrimination under Section 504 and Title II of the ADA can be found in exclusion, inferior treatment or differential treatment that is not a justified response to the needs or the capabilities of the individual with the disability. 34 C.F.R. § 104.4(a). Discrimination is defined in terms of specific actions that are prohibited actions or affirmative obligations, including:

1.  Denying a qualified individual with a disability the opportunity to participate in or benefit from an aid, benefit, or service. 34 C.F.R. §104.4(b)(1). *See Midlothian (TX) Indep. Sch. Dist.*, 115 LRP 2166 (OCR 8/01/14) (finding that a school district denied a sixth-grader with a Section 504 plan for migraines, anxiety, and food allergies an equal opportunity to participate in cheerleading). This "comparable opportunities" requirement applies to all aspects of a school district's

academic, non-academic and extracurricular operations.   34 C.F.R. §104.37(a)(1).

2. Affording a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded others without disabilities.  34 C.F.R. 104.4(b)(1)(ii).  *See Benton Carrol Salem (OH) Local Sch. Dist.*, 65 IDELR 156 (OCR 2014) (concluding that a school district violated Section 504 when it failed to give adequate notice of extracurricular activities and upcoming events to students with disabilities.); *see Huron (SD) #02-2 Sch. Dist.*, 56 NDLR 150 (OCR 2017) (finding that the school district may have violated Section 504 and Title II when the school tennis coaches filed to provide the same level of instruction and support to a high school student with a visual impairment and chronic migraines.)

3. Providing a qualified individual with a disability with an aid, benefit, or service that is not as effective as that provided to others.  34 C.F.R. § 104.4(b)(1)(iii).

4. Providing different or separate aids, benefits, or services to individuals with disabilities unless such action is necessary to provide aids, benefits, or services that are as effective as those provided to others.  34 C.F.R. § 104.4(b)(1)(iv).  *See Columbus City (OH) Schs.*, 114 LRP 1263 (OCR 8/05/14) (determining that the use of seclusion as a form of punishment for a student with autism was discriminatory.)  Although not unlawful per se, OCR requires school districts to justify non-uniform treatment utilizing separate or different aids, benefits, or services.

5. …

6. …

7. Otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. 34 C.F.R. §104.4(b)(1)(vii).

8. …

7.2    Like Section 504, Title II of the ADA prohibits state and local governments, including public school districts, from discriminating against persons with disabilities.  Where Title II exceeds Section 504 requirements, school districts must comply with Title II requirements.  42 U.S.C. § 12131 – 42 U.S.C. § 12134. Discrimination under Title II is philosophically the same as under Section 504 and includes the following definitions of discrimination:

1.  Use of criteria that unnecessarily "screen out" or "tend to screen out" individuals with disabilities from the use and enjoyment of goods and services.

2. Failure to make nonfundamental, reasonable modifications of "policies, practices, or procedures" when such modification is necessary to accommodate disabled individuals.

3. Failure to take necessary steps "to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals."
42 U.S.C. § 12182(b)(2).

8.    DISABILITY HARASSMENT UNDER SECTION 504 AND TITLE II OF THE ADA.

8.0    The U.S. Department of Education has defined disability harassment under Section 504 and Title II as intimidation or abusive behavior toward a student based on disability that creates a hostile environment.  *See Dear Colleague Letter*, 111 LRP 45106 (OCR 7/25/00); *see also Montgomery County (AL) Sch. Dist.,* 48 IDELR 108 (OCR 2007) ("intimidation or abusive behavior toward a student based on disability that creates a hostile environment by interfering with or denying a

student's participate in or receipt of benefits, services, or opportunities in the institution's program"). Disability-based harassment does not have to involve repeated incidents. *Dear Colleague Letter*, 55 IDELR 174 (OCR 2010). *See Philadelphia (PA) Sch. Dist.*, 46 IDELR 169 (OCR 2006) (finding that one incident of harassment can create a hostile environment, depending on the circumstances); and *Dear Colleague Letter*, 55 IDELR 174 (OCR 2010) (stating that harassment does not have to include intent to harm, be directed at a specific target, or involve repeated incidents.)

8.1    OCR will find discrimination in violation of Section 504 and Title II based on bullying or harassment where:

1. A student is bullied based on a disability;

2. The bullying is sufficiently serious to create a hostile environment;

3. School officials know or should know about the bullying; and

4. The school does not respond appropriately.

*See Dear Colleague Letter:  Responding to Bullying of Students with Disabilities*, 64 IDELR 115 (OCR 2014); and *Dear Colleague Letter*, 55 IDELR 174 (OCR 2010).  If a district employee engages in the harassment of a student with a disability that subjects a student to a hostile environment and that employee is acting, or reasonably appears to be acting, in the context of carrying out his employment duties, the school district is responsible for the discriminatory conduct

whether or not it has notice of the conduct. *Mobile County (AL) Pub. Schs.*, 115 LRP 24523 (OCR 1/30/15).

8.2     Section 504 and Title II require that once a school district is on notice of possible disability-based harassment, to avoid a violation of Section 504 and Title II, it must take prompt and effective steps to determine what occurred and to end any harassment, eliminate a hostile environment if one has been created, and prevent its recurrence. *Hononegah Cmty. High Sch. Dist. #207 (IL),* 66 IDELR 82 (OCR 2015).

8.3     Because Congress modeled the latter on the former, the elements for both claims are nearly identical. The Fifth Circuit has equated liability standards under Section 504 and the ADA. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *Pace v. Bogalusa City Sch. Bd*., 403 F.3d 272 (5th Cir. 2005 (en banc). Under Section 504, B.P. and C.P. must credibly allege that they are a "qualified individual with a disability" and that the Brownsville ISD denied them benefits or services "by reason of" their disability.   Under Title II, B.P. and C.P. must plausibly alleged that they are a "qualified individual with a disability" and that the Brownsville ISD denied them benefits or services "solely by reason" of their disability.  The Fifth Circuit has long established that "[A] cause of action is stated under §504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full

benefits of the school program." *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983).  To show disability discrimination in the educational context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Bennett-Nelson v. La. Bd. of Regents,* 431 F.3d 448, 454 (5th Cir. 2005).    The plaintiff must show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Marvin H.*, 714 F.2d at 1356. The Fifth Circuit has adopted the holding in *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982) and found that "facts creating an inference of professional bad faith or gross misjudgment " are necessary to substantia a cause of action for intentional discrimination under Section 504 or ADA against a school district predicted on a disagreement over compliance with the IDEA.    Allegations that educational authorities "exercised professional judgement," even mistakenly, do not suffice unless they "depart grossly from the accepted standards among educational professionals." *Bennett*, 431, F.3d at 454-55 (quoting *Monahan*, 687 F.2d at 1171). The Fifth Circuit has long held that a plaintiff pursuing an ADA or Section 504 claim for failure to accommodate must school the school district "refused" to adopt the accommodation but found it nonetheless appropriate to apply a bad faith or gross misjudgment standard in making that determination.  *D.A.*, 629 F.3d at 454-55.    Thus, the question is

whether the Brownsville ISD school district officials "departed grossly from accepted standards among educational professionals." *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010).

8.4    Furthermore, to recover monetary damages under either statute, B.P. and C.P. must prove that the discrimination was intentional. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002); 42 U.S.C. §12132.  In *D.A. v. Houston Indep. Sch. Dist.*, the Fifth Circuit found that both a "deliberate indifference" standard and a "gross misjudgment" standard might apply with respect to establishing intentional discrimination by a school district in the context of claims of disability-based peer bullying or harassment. 629 F.3d 450, 454-455, (5th Cir. 2010).

8.5    Furthermore, by its actions, Brownsville ISD intimidated B.P.'s and C.P.'s parents for the purpose of interfering with their rights and privileges secured by Section 504.

9.    VIOLATIONS OF THE 4TH AMENDMENT TO THE U.S. CONSTITUTION.

9.0    Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

9.1    At all times relevant to these claims, Defendant Robert Torres was acting in his capacity as an employee of Defendant Brownsville ISD, and therefore acting under the color of the law.

9.2    Defendant Torres' actions and omissions which caused B.P.'s and C.P.'s constitutional deprivations are thus enforceable pursuant to 42 U.S.C. §1983.

9.3    Defendant Torres' verbal and physical actions, towards B.P. and C.P. were unreasonable and deliberate.

9.4    Defendant Torres' verbal and physical actions towards B.P. and C.P. were unnecessary and negligent.

9.5    Defendant Torres' verbal and physical actions toward B.P. and C.P. were excessive.

9.6    As such, all these acts committed by Defendant Torres violated the rights of B.P. and C.P. pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

10.    PLAINTIFFS' CONSTITUTIONAL RIGHT TO BODILY INTEGRITY.

10.0    Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

10.1    At all times relevant to their claims, Defendant Torres was acting in his capacity as an employee for the Defendant Brownsville ISD, and therefore acting under the color of the law.  Defendant Torres' actions and omissions which caused B.P.'s and C.P.'s Constitutional deprivations are thus enforceable pursuant to 42 U.S.C. § 1983.

10.2   Specifically, and at all times relevant herein, B.P. and C.P. possessed both substantive and procedural Due Process rights including, but not limited to, a privacy interest in their bodily integrity.

10.3   Specifically, and at all times relevant herein, B.P. and C.P. possessed both substantive and procedural Due Process rights including, but not limited to, a dignity interest.   As discussed above, Defendant Torres actions towards C.P. by leaving his urine filled diaper on all day without changing it and pulling B.P.'s hair to force her to comply with his requests certainly violated their bodily integrity.

10.4   The acts and omissions of Defendant Torres were deliberately indifferent to the overall health, safety and welfare of B.P. and C.P. and their bodily integrity and deprived them of their Constitutional rights to privacy and dignity.

11.   CLAIMS PURSUANT TO THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

11.0   Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

11.1   The acts and omissions of Defendant Torres singularly discriminated against B.P. and C.P. when they were treated in a disparate manner as compared to other students similarly situated, thereby violating their rights pursuant to the Equal Protection Clause of the Fourteenth Amendment, for which B.P. and C.P. seek recovery pursuant to 42 U.S.C. §§ 1983 and 1988.

12.    PROCEDURAL VIOLATIONS.

12.0    Plaintiffs contend that the failure by Brownsville ISD to have policies, procedures, practices and customs in place to protect B.P. and C.P. from the professional staff hired to keep them safe, violated their rights pursuant to the Fourteenth Amendment.

12.1    During the relevant time period contemplated in this action, Brownsville ISD, by and through their designee, Robert Torres, had an actual policy, practice and custom of conscious and deliberate indifference to federal law, state law, federal and state administrative regulations and directives, and Brownsville ISD policies and procedures in regard to the treatment of B.P. and C.P. and such failures were the moving force behind the injuries to B.P. and C.P. for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

12.2 In addition, Plaintiffs contend the failure of the Brownsville ISD to sufficiently train staff violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42. U.S.C. §1983.

12.3    Additionally, Plaintiffs contend that the failure of the Brownsville ISD Defendants to sufficiently supervise staff violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.  In regard to concerns raised by Ms. Torres that are the basis of this cause of action and the Brownsville ISD's failure to remedy any of the injuries

to B.P. and C.P. sustained at the hand of Defendant Torres and others, during the
2016-17 school year, they filed a complaint with the Texas Education Agency
(TEA, pursuant to 20 U.S.C. §1415(b)(7), 89 Tex. Admin. Code § 89.1165,
Section 504 of the Rehabilitation Act.

13.    RATIFICATION

13.0   Plaintiffs incorporate by reference all the above-related paragraphs, as
well as those below, with the same force and effect as if herein set forth.

13.1   Brownsville ISD ratified the acts, omissions, and customs of
Defendant Robert Torres and Brownsville ISD employees and staff.

13.2   Brownsville ISD ratified the acts, omission, and customs of their
personnel and staff.

13.4   As a result, Brownsville ISD is responsible for the acts and omissions
of staff who were responsible for the harassment, discrimination and Constitutional
violations of B.P. and C.P.

14.    PROXIMATE CAUSE.

14.0   Plaintiffs incorporate by reference all the above related paragraphs, as
well as those below, with the same force and effect as if herein set forth.

14.1   All of the foregoing acts and omissions of Brownsville ISD, both
separately and/or collectively, jointly and severally, whether in any official

capacity or individual capacity, constitute a direct and proximate cause of the injuries and damages set forth herein.

    15.    CLAIMS FOR RELIEF.

    15.0    FIRST CLAIM FOR RELIEF -Denial of a Free Appropriate Public Education in Violation of Section 504 of the Rehabilitation Act of 1973.

    15.1    Plaintiffs realleged all other paragraphs as if fully set forth herein.

    15.2    Section 504 requires that districts "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). FAPE under Section 504 requires that district provide education or related services designed to meet the needs of students with disabilities as adequately as the district meets the needs of students without disabilities. 34 C.F.R. § 104.33(b); see *Mark H. v. Lemahieu*, 513 F.3d 922, 930 (9th Cir. 2008).

    15.3    Section 504 defines appropriate education as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of [students with disabilities] as adequately as the needs of [nondisabled] person are met and (ii) are based upon adherence to [Section 504] procedures." 34 C.F.R. § 104.33(b)(2).

15.4   Although the standards are similar, courts have held that FAPE under the IDEA and FAPE under Section 504 are distinct standards.  FAPE under the IDEA is an affirmative duty to provide a student with a disability an appropriate public education, whereas FAPE under Section 504 is a negative prohibition against discrimination.  *C.G. v. Commonwealth of Pennsylvania Dep't of Educ.*, 734 F.3d 229, 234 (3d Cir. 2013); *see also In re: Student with a Disability*, 113 LRP 42334 (SEA NY 09/13/13) concluding that a violation of Section 504's least restrictive environment requirement at 34 C.F.R. §104.34, requiring comparable services and activities, was not analogous to any IDEA regulation).

16.   SECOND CLAIM FOR RELIEF – Denial of a Free Appropriate Education In Violation of Title II of the ADA.

16.0   Plaintiffs realleged all other paragraphs as if fully set forth herein.

16.1   While Section 504 prohibits discrimination based on disability to any federally funded "program or activity," Title II of the ADA prohibits any "public entity" from discriminating based on disability.  Title II requires a public entity to make "reasonable modifications" to "its policies, practices, or procedures" when necessary to avoid such discrimination.  28 C.F. R. §35.130(b)(7) (2016); see e.g. *Alboniga v. School Bd. of Broward Cty*., 87 F.Supp.3d 1319, 1345 (S.D. Fla. 2015) (requiring an accommodation to permit the use of a service animal under Title II.) Title II of the ADA requires public entities to (1) make "reasonable modifications to rules, policies, or practices"; (2)" remov[e]…architectural, communication, or

transportation barriers"; and (3) "provi[de] auxiliary aids and services", so as to enable disabled persons to participate in programs and activities.  42 U.S.C. § 12131(2).

17.    THIRD CLAIM FOR RELIEF – Damages

17.0    Plaintiffs B.P. and C.P. incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

17.1    As a direct and proximate result of Brownsville ISD's conduct, B.P. and C.P. suffered damages for which they are entitled to recover herein including but not limited to:

a.  Loss of access to educational opportunities to the same extent as non-disabled students;

b.  Loss of benefits to educational opportunities to the same extent as non-disabled students;

c.  Physical pain in the past;

d.  Physical pain in the future;

e.  Mental anguish in the past;

f.  Mental anguish in the future;

g.  Various out-of-pocket incurred by the family but for the acts and omissions of Brownsville ISD.

18.    FOURTH CLAIM FOR RELIEF - Punitive Damages.

18.0   Plaintiffs B.P. and C.P. incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

18.1   Plaintiffs reasonably believe that the acts and omissions of Defendant Brownsville ISD and Defendant Torres satisfy criteria for violation of civil rights and discrimination because the facts show intentional discrimination that shock the conscience.

19.   ATTORNEY FEES.

19.0   Plaintiffs B.P. and C.P. incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

19.1   It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit.  Upon judgment, Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1988(b), 29 U.S.C. § 794 and 42 U.S.C. § 12100 *et seq*.

20.   DEMAND FOR JURY TRIAL.

20.0   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

**PRAYER**

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in their favor and award all relief allowed by law and equity, including judgment against Defendant Brownsville ISD and Defendant Robert Torres in an

amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal, if required, Section 504, 29 U.S.C. 794, Title II of the ADA, 42 U.S.C. § 12100 *et seq.*, 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 2000d *et seq.*; together with pre-and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and, for any further relief that this Court deems just and proper; and any other relief as allowed by law.

Respectfully submitted,

 */s/Yvonnilda Muñiz*
**YVONNILDA MUÑIZ**
**State Bar No. 24007717**

**Law Office of Yvonnilda Muñiz, P.C.**
P.O. Box 92018
Austin, TX  78709
Tel: (512) 288-4279
Fax: (888) 398-8808
Email:  ygmuniz@outlook.com

**ATTORNEY FOR PLAINTIFFS**